IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CV-258-D

| | | |
|---|---|---|
| DAVID BLACKMON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| G.UB.MK CONSTRUCTORS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On October 1, 2014, David Blackmon ("Blackmon" or "plaintiff") brought a personal injury negligence action against G.UB.MK Constructors, WorleyParsons Group, Inc., Williams Plant Services, LLC, URS Corporation, WorleyParsons Polestar, Inc., and WorleyParsons of North Carolina, Inc. (collectively, "defendants") in Robeson County Superior Court [D.E. 1-1].[1] On November 5, 2014, defendants removed Blackmon's action to this court [D.E. 1]. On January 26, 2015, Blackmon filed an amended complaint. See [D.E. 26].

On March 14, 2016, defendants moved for summary judgment [D.E. 58]. On March 15, 2016, the court notified Blackmon about the summary judgment motion [D.E. 60]. See Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Blackmon failed to respond to defendants' motion. On August 23, 2016, defendants moved for sanctions against Blackmon [D.E. 62]. As discussed below, the court grants defendants' motion for summary judgment and denies defendants' motion for sanctions.

---

[1] Blackmon also sued EnSafe, Inc., in both his complaint and amended complaint. See [D.E. 1-1, 26]. On January 12, 2016, EnSafe, Inc., and Blackmon jointly moved to voluntarily dismiss Blackmon's claims against EnSafe, Inc. [D.E. 56]. Thus, EnSafe, Inc., is no longer a party, and this order does not address Blackmon's claims against EnSafe, Inc. See Am. Compl. [D.E. 26] ¶¶ 29–50.

I.

On October 9, 2013, Specialty Services, LLC, employed Blackmon, and he was working in the Cumberland City Fossil Plant in Cumberland City, Tennessee ("the plant"). Am. Compl. [D.E. 26] ¶ 12; Ans. [D.E. 30] ¶ 12. Numerous employees of other companies, including defendant G.UB.MK Constructors, a joint venture among defendants WorleyParsons Group, Inc., Williams Plant Services, LLC, and URS Corporation, also were at the plant. [D.E. 58] ¶ 5; see Am. Compl. ¶ 13. An unnamed employee working in the plant activated an "air tugger," which caused a "toxic dust discharge." Am. Compl. ¶ 20; see Ans. ¶ 20. At the moment of the activation and toxic-dust discharge, Blackmon was standing near the air tugger. Am. Compl. ¶ 21. As a result of the air tugger's activation, Blackmon inhaled the toxic-dust discharge, "asxphyxiate[d]," and lost consciousness. Id.

Blackmon claims that he "developed masses in his lungs and other areas of his body which . . . were directly and proximately caused by th[e] toxic dust inhalation." Id. ¶ 22. Blackmon alleges that defendants, by and through their agents, negligently exposed him to the toxic-dust discharge and caused his resulting injuries. See id. ¶¶ 29–37. Additionally, Blackmon alleges that defendants negligently maintained the area around him at the time of the toxic-dust discharge, negligently trained and informed Blackmon about the dangers of toxic-dust discharge, prevented Blackmon from obtaining "proper health care," and "engag[ed] . . . [in] their additional acts and omissions of failing to provide Plaintiff with information they could have and should have obtained" regarding the toxic-dust discharge. Id. ¶¶ 31–36. Blackmon seeks monetary damages for his "serious, painful, and permanent bodily injuries causing medical and other expenses, loss of earnings, as well as decreased earning capacity." Id. 37.

2

On March 14, 2016, defendants moved for summary judgment [D.E. 58] and filed a memorandum in support [D.E. 59]. Defendants make two arguments. First, defendants argue that WorleyParsons Polestar, Inc., and WorleyParsons of North Carolina, Inc., did not "provide[ ] any labor or equipment at the Plant on the day of the incident." [D.E. 59] 4. Thus, defendants argue that neither Worley Parsons Polestar, Inc., nor WorleyParsons of North Carolina, Inc., are liable for Blackmon's alleged injuries resulting from the toxic-dust discharge. Id. Second, defendants argue that North Carolina law requires Blackmon to provide expert witness testimony concerning causation because the case involves medical questions that fall outside the ordinary experience and knowledge of laymen. Id. 4–8. Because Blackmon has failed to provide any such expert testimony, defendants seek summary judgment. Id.

## II.

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment must initially show an absence of a genuine dispute of material fact or the absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986) If a moving party meets its burden, the nonmoving party must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quotation and emphasis omitted). A genuine issue for trial exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot create a genuine issue of material fact through mere speculation or the building of one

3

inference upon another."). Only factual disputes that might affect the outcome under substantive law properly preclude summary judgment. Anderson, 477 U.S. at 248. In reviewing the factual record, the court views the facts in the light most favorable to the nonmoving party and draws reasonable inferences in that party's favor. Matsushita, 475 U.S. at 587–88. However, if a party fails to "address another party's assertion of fact," the court may "consider such fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)-(3).

Blackmon's claim requires this court to apply North Carolina law. In resolving any disputed issue of state law, the court must determine how the Supreme Court of North Carolina would rule on Blackmon's claim. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). If the state supreme court "has spoken neither directly nor indirectly on the particular issue before [the federal court, that court must] . . . predict how [the state supreme] court would rule if presented with the issue." Id. (quotations omitted). In making that prediction, the court "may consider lower court opinions[,] . . . treatises, and the practices of other states." Id. (quotation omitted).[2] When predicting an outcome under state law, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

Under North Carolina law, "[p]roximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense." Williams v. Carolina Power & Light Co., 296 N.C. 400, 403, 250 S.E.2d 255, 258 (1979) (quotation omitted); see Shelton v. Steelcase, Inc., 197

---

[2] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

4

N.C. App. 404, 432, 677 S.E.2d 485, 504 (2009); Wood v. Hollingsworth, 166 N.C. App. 637, 642, 603 S.E.2d 388, 392 (2004). However, in claims "involv[ing] complicated medical questions far removed from the ordinary experience and knowledge of laymen," an expert witness must provide causation testimony. Click v. Pilot Freight Carriers, Inc., 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980); see Holley v. ACTS, Inc., 357 N.C. 228, 232, 581 S.E.2d 750, 753 (2003); Miller v. Lucas, 267 N.C. 1, 14–15, 147 S.E.2d 537, 547 (1966). Without competent expert testimony, "evidence of causation" remains "mere speculation or conjecture" and summary judgment in favor of the defendant is appropriate. Anderson v. Hous. Auth. of the City of Raleigh, 169 N.C. App. 167, 171–72, 609 S.E.2d 426, 428–29 (2005). This expert-testimony requirement applies in "actions in which a party claims to have been injured by an airborne toxin." Phillip v. GEO Grp., Inc., No. 5:09-CT-3115-FL, 2012 WL 5392120, at *7 (E.D.N.C. Nov. 5, 2012) (applying North Carolina law), aff'd, 520 F. App'x 215 (4th Cir. 2013) (per curiam) (unpublished).

Blackmon's claim involves the question of whether defendants' negligence exposed him to "inhalation" of a "toxic dust discharge." See Am. Compl. ¶¶ 29–37. Blackmon theorizes that this exposure caused "a seven millimeter spot on [his] lung," a "thirty millimeter mass that is right above [his] adrenal gland," and a "40 percent loss" in lung capacity. Blackmon Dep. [D.E. 58-3] 100; see Am. Compl. ¶¶ 22–23 ("Plaintiff has now developed masses in his lungs and other areas of his body which . . . . were directly and proximately caused by [his] toxic dust inhalation."). Neither Blackmon's amended complaint nor the record references any injury other than the long-term health implications of Blackmon's toxic-dust inhalation. See Am. Compl. ¶¶ 21–22; Blackmon Dep. 100 (describing Blackmon's injuries). Therefore, Blackmon's case involves the complicated medical question of whether Blackmon was "injured by an airborne toxin," and Blackmon must provide expert testimony regarding causation. See, e.g., Phillip, 2012 WL 5392120, at *7 (collecting cases);

5

Anderson, 169 N.C. App. at 171–72, 609 S.E.2d at 428–29. Although defendants have provided competent expert testimony refuting causation, see Dr. Aris Aff. [D.E. 58-4] ¶¶ 5–16, Blackmon has failed to provide any expert testimony to support his claim. Accordingly, the court grants summary judgment to the defendants.

Additionally, and in the alternative, the court grants summary judgment to defendants WorleyParsons Polestar, Inc., and WorleyParsons of North Carolina, Inc. WorleyParsons Polestar, Inc., and WorleyParsons of North Carolina, Inc., contend that they "had no involvement in any work being performed at the Plant on October 14, 2013," when Blackmon's alleged exposure took place. See [D.E. 58] ¶ 4. In support, defendants provided an affidavit. See Kalban Aff. [D.E. 58-2]. Blackmon, on the other hand, has failed to introduce any evidence concerning Worley Parsons, Polestar, Inc., or Worley Parsons of North Carolina, Inc., "showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248 (quotations omitted). At summary judgment, Blackmon may not "rest upon the mere allegations or denials of his pleading." Id. Accordingly, the court grants summary judgment to defendants WorleyParsons Polestar, Inc. and WorleyParsons of North Carolina, Inc.

Finally, defendants move for sanctions against Blackmon, contend that Blackmon has engaged in "dilatory behavior," and ask the court to dismiss Blackmon's case as a sanction. See id. [D.E.62] ¶¶ 17–18; cf. Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40–41 (4th Cir. 1995). In light of the court's disposition of defendants' motion for summary judgment, the court denies the motion for sanctions.

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 58] and DENIES defendants' motion for sanctions [D.E. 62]. Defendants may file a motion for costs in

6

accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 11 day of November 2016.

JAMES C. DEVER III
Chief United States District Judge